## Musser *v.* Brindle.   Moore, Assignee, Appellant.

*Insolvency—Bankruptcy — Preference— Judgment — Execution—Act of June 4, 1901, P. L. 404.*

Where, after the passage of the insolvency act of June 4, 1901, P. L. 404, a judgment is entered upon a bond secured by a mortgage executed prior to the passage of the act, and execution is issued on the judgment, and thereafter the defendant makes a general assignment for the benefit of creditors, the assignee for creditors is entitled to have the execution on the personal property of the defendant set aside. The act does not defeat the plaintiff of his preference, if he has one, but the assignee is entitled to the control and custody of the personal property of the assignor.

Argued March 10, 1903.   Appeal, No. 32, March T., 1903, by Charles E. Moore, assignee for benefit of creditors of George Brindle, from order of C. P. Cumberland Co., May T., 1902, Nos. 17 and 18, discharging rule to set aside execution in case of Joseph E. Musser v. George Brindle.   Before BEAVER, ORLADY, SMITH, W. D. PORTER and MORRISON, JJ.   Reversed.

Rule to set aside execution.

The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*J. M. Weakley,* of *Weakley & Shapley,* for appellant.—That the legislature has the power to enact a law which changes the method of enforcing contracts existing at the time such a law is passed cannot be doubted : Breitenbach v. Bush, 44 Pa. 313 ; Coxe v. Martin, 44 Pa. 322 ; Koshkonong v. Burton, 104 U. S. 668 ; Terry v. Anderson, 95 U. S. 628.

It is respectfully submitted that the decisions of the court of common pleas, Insolvency of Shonk, 26 Pa. C. C. Rep. 13, and McMullin's Petition, 26 Pa. C. C. Rep. 157, do not apply to the present case. In both the cases cited the application to vacate the executions was by creditors, in cases in which no assignment had been made or receiver been appointed. The rule of 1901 provides that upon application of an assignee or receiver all process of execution shall be set aside and vacated.

*H. H. Mercer,* for appellee.—The act of June 4, 1901, is not retroactive and therefore its provisions cannot effect contracts made before it was approved : McMullin's Petition, 26 Pa. C. C. Rep. 157 ; McCurdy v. Gantz, 26 Pa. C. C. Rep. 417 ; Shonk's Case, 26 Pa. C. C. Rep. 13.

The words " all executions " in the act embrace only such executions, the effect of which is to give a preference forbidden by the act : Lobach v. Riegle, 26 Pa. C. C. Rep. 145.

OPINION BY BEAVER, J., May 4, 1903 :

Plaintiff entered judgment against the defendant, who is a farmer and has never been engaged in any other business, April 2, 1902, upon judgment bonds secured by a mortgage dated April 1, 1895, and issued execution thereon on the day of the entry. April 12, 1902, defendant made a general assignment for the benefit of creditors to Charles E. Moore, the appellant. April 22, 1902, the assignee presented his petition to the court of common pleas, asking that the writs of fieri facias in the hands of the sheriff, issued upon the judgments above referred to, might " be set aside and vacated, as provided

by the act of assembly of 1901, relative to assignments for creditors."

The court below disposed of the rule upon petition and answer and subsequently, upon the filing of an amended petition, granted a reargument, discharging the rule in the first hearing, because the warrant of attorney to confess judgment was prior in date to the act of assembly of June 4, 1901, P. L. 404, relating to insolvency, etc., and secondly, because the operation of the act referred to is suspended during the existence of the national bankrupt act of 1898, at least in all cases which come within the provisions of the latter.

It having been pointed out to the court in the amended petition, " that, at the time of making the said assignment, the aforesaid George Brindle, assignor, was engaged in farming the aforesaid farm, as he had been for many years before, and that he was not then and never had been engaged in any other business; that the stock and farming implements levied upon were used by him in carrying on the said farm, and the hay and grain were the products of the farm grown by the assignor," from which it followed that he was not subject to the provisions of the national bankrupt act of 1898 (see section 4 of said act) ; the court below modified that portion of the opinion previously filed, relating to the operation of the bankrupt law, saying, in a supplemental opinion : " Assuming this position to be correct, the first reason given in our former opinion for discharging the rule still holds good and, therefore, the order already entered must be sustained."

The court further says, in the latter opinion : " It is to be noted that there is not in this case the slightest indication of fraud or collusion."

The question, therefore, which presents itself for consideration is the construction of the act of June 4, 1901, P. L. 404, which is entitled " An act relating to insolvency ; embracing, among other matters, voluntary assignments for the benefit of creditors, and adverse proceedings in insolvency by creditors ; forbidding also certain preferences ; providing for the distribution of the insolvent's estate and, in certain contingencies, relieving him and others liable with him from further liability for his or their debts," in so far as it relates to the method of distribution of the insolvent's personal estate.

The special section, under which the assignee applied to have the executions in the hands of the sheriff set aside, is as follows : " Section 16. Upon application of the assignee or receiver, the court shall vacate and set aside all attachments, executions, sequestrations or other legal proceedings not wholly completed, and all money in court or in the hands of the sheriff, by virtue thereof, shall be paid to such assignee or receiver. The assignee or receiver shall pay, out of so much of the insolvent's estate as was attached, sequestered or levied upon, or was received from the court or sheriff, the legal cost of such vacated proceedings as a preferred claim, if the creditor's claim is afterwards allowed in the distribution of the insolvent's estate ; and the creditor's claim shall also be paid thereout, if it shall be decided that notwithstanding the provisions of this act he was entitled to a preference."

It is clear, from the mere reading of this section of the act, that no right of the plaintiff is attempted to be impaired. If he was entitled to a preference by reason of the entry of the judgments and of the issuing of the writs of fieri facias in the sheriff's hands at the time the assignment was made, he does not lose the benefits of that preference, inasmuch as the act provides for the payment of both costs and claim, "if it shall be decided that, notwithstanding the provisions of this act, he was entitled to a preference." There would seem to be no question, therefore, that this section of the act relates exclusively to the remedy by which the plaintiff is to secure his rights rather than any interference with, or modification, or impairment of the rights themselves. Does the fact that the bonds, upon which the judgments were entered and upon which writs of fi. fa. were issued, were dated before the passage of the act and that the writs became a lien upon the defendant's personal property before the date of the assignment under which the assignee claimed to have them set aside, prevent the application of the provisions of the act of June 4, 1901, supra, under which the assignee presented his petition ?

It may be well to inquire what rights the plaintiff had. He had, before the passage of the act, a lien upon the defendant's real estate by virtue of his mortgage, if properly recorded. It may be conceded that this lien could not be divested by the act referred to. It was a vested right secured under the provisions

of a contract, the obligation of which could not be impaired by the legislature. He had also a right at any time to enter judg-ment upon his bonds and, in case of default as to any of the covenants contained in the mortgage, to issue execution thereon, which would thereby give him a lien upon the defendant's personal property. If he had done this before the passage of the act under consideration, a different question would be presented. But his judgments were entered and executions thereon issued after the passage of the act and, if the act be not unconstitutional, subject to its provisions. Even then, if he had secured vested rights, we are inclined to think the legislature had the right to prescribe the remedy under which his rights were to be worked out. That part of the act with which we have to deal at present is expressed in the title as " providing for the distribution of the insolvent's estate " and the section under consideration has to do only with the machinery through which such distribution is to be made. It cannot be doubted that the legislature had the right to provide such machinery and that the provisions relating thereto controlled any process of collection put in course of execution subsequent to the passage of the act. The language of the act is not only specific but mandatory : " upon application of the assignee or receiver, the court shall vacate and set aside all attachments, executions, sequestrations or other legal proceedings not wholly completed." The plaintiff's right to a preference, if he had one, is in no way invalidated, as it is expressly preserved to him in the section referred to. In Deichman's Appeal, 2 Wharton, 395, in which it is held that " the 21st section of the act of February 24, 1834, which takes away the preference given by the act of 1794 to judgments in the order of paying the debts of the decedent, is not unconstitutional in its application to judgments which were obtained between the dates of the two acts," in the opinion delivered by SERGEANT, J., he says : " The only event, that can be considered as vesting any specific right or interest in the creditor, is the debtor's death. His insolvency is then ascertained; the consequences of the contract are consummated; the proportion has become a fixed and determined interest, and cannot be divested. Before that time it is but a future and contingent right. In the case of Com. v. Lewis, 6 Binn. 266, C. J. TILGHMAN states the difference between the two cases : ' A

general creditor has no right to any particular part of the estate of his debtor. If he wants to be secure, he should obtain a conveyance or some kind of lien. A law which should deprive him of the benefit of a conveyance, or lien by ex post facto operations, would be most unjust; but a man who trusts to the general credit of his debtor has no right to complain, if, in case of deficiency of assets, he loses his debts in consequence of a law intended to operate for the public benefit.' In the present case, the assets are personal; the appellant's judgment was no lien upon them at the passage of the law or when it commenced its operation.

" We are, therefore, of opinion that the distinction made by legislature was not an infringement of the constitutional provisions referred to."

The principle herein stated undoubtedly applies to the present case. In that case it was the distribution of an insolvent decedent's estate. In this case it is the distribution of the estate of an insolvent who has made an assignment for the benefit of all his creditors. In the one case the authority to make distribution is in the hands of the administrator; in the other, in the hands of the assignee. Keeping clearly in mind the distinction between rights and remedies and failing to see that any right of the plaintiff is in any way invaded, but that the benefit of any preference, if he has one, is fully preserved by the terms of the act, we can see no reason why the provisions of the act do not apply to the present case.

It is true that, so far as appears, the question of fraud or collusion does not enter into the case but, so far as this portion of the act is concerned, it is not necessary that there should be either fraud or collusion to make it operative.

The assignee having brought himself within the provisions of section 16 of the act of June 4, 1901, was entitled to the control and custody of the personal property of the assignor.

The rule to show cause why the writs of fieri facias, issued upon the judgments entered by the plaintiff should not be set aside under its provisions, should, therefore, have been made absolute.

The decree of the court below is, therefore, reversed, the rule to show cause is made absolute and the record remitted to the court below, in order that this decree may be carried into effect.